UNITED STATES of America,
Defendant, Appellant,

v.

Abraham SNIDER et al., Plaintiffs,
Appellees.

No. 4925.

United States Court of Appeals
First Circuit.

June 22, 1955.

Melva M. Graney, Sp. Asst. to Atty. Gen., with whom H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Sp. Assts. to Atty. Gen., Anthony Julian, U. S. Atty., and Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., were on brief, for appellant.

David Burstein, Boston, Mass., with whom Norman B. Asher, and Hale & Dorr, Boston, Mass., were on brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment for the plaintiffs in the amount of $1,543.18 with interest of $341.50 entered by the District Court of the United States for the District of Massachusetts on November 22, 1954, 125 F.Supp. 352. The plaintiffs sued to recover an alleged over payment of taxes for the calendar year 1950, stating in their complaint that $3,909.01 of a $9,000 dividend paid to the plaintiff, Abraham Snider, by the Hotel Kenmore Corp. in 1950 had been erroneously reported by them as taxable income whereas in fact it was not taxable income being a distribution of the capital of the Hotel Kenmore Corp. rather than a distribution of earnings and profits.

The stipulated facts deal mainly with the tax-free reorganization of a Massachusetts real estate trust, which owned and operated two Boston hotels, the Hotel Braemore and Hotel Kenmore, into two corporations, the Hotel Braemore Corp. and the Hotel Kenmore Corp. The dividend, the nature of which is the principal issue in this case, was declared by the Hotel Kenmore Corp.

The plaintiff, Abraham Snider, owned 25 shares of the 100 shares outstanding of the Massachusetts real estate trust

which had been organized in 1922. In 1947 the stockholders of the trust agreed that it would be preferable that the hotel properties be owned and operated by two corporations rather than a real estate trust. At this time the trust had a deficit of about $327,000. The Hotel Braemore Corp. was organized on May 29, 1947. The real estate trust transferred the Hotel Braemore property to this Hotel Braemore Corp. in exchange for all the outstanding stock of the latter corporation except for four shares which had previously been issued to the trust for a nominal sum. Also on May 29, 1947 the Hotel Kenmore Corp. was organized and this corporation issued all its outstanding stock to the four stockholders of the real estate trust in exchange for their trust stock except for four shares which had been issued to these four stockholders for a nominal sum. The Hotel Kenmore Corp. then liquidated the real estate trust and transferred all its assets to itself. Thus the Hotel Kenmore Corp. acquired ownership of the Hotel Kenmore and through its ownership of the stock of the Hotel Braemore Corp., the Hotel Braemore. The new corporations were apparently more successful than the real estate trust, although there was no change in any material manner in the operation of the business, and profits were earned by the Hotel Kenmore Corp. in the fiscal years ending March 31, 1948, 1949, 1950 and 1951 of about $140,000. On December 8, 1950 a cash dividend of $36,000 was paid to the stockholders of the Hotel Kenmore Corp., the plaintiff, Abraham Snider, receiving $9,000. The Hotel Kenmore Corp. had available for distribution in 1950 as current earnings and profits a little over $20,000 and there is no question that approximately $5,100 of the $9,000 received by the plaintiff was clearly dividend income attributable to current earnings and profits and taxable to the plaintiffs.

The issue in this case is whether any portion of this $36,000 distribution to stockholders of the Hotel Kenmore Corp. may be offset by the 1947 deficit of the Massachusetts real estate trust (which deficit is greater than the earnings and profits accumulated by the Hotel Kenmore Corp. since 1947) despite the fact that the real estate trust was terminated in 1947 following the tax-free reorganization of the ownership of the hotel properties. The sections of the Internal Revenue Code of 1939 involved are Sec. 115 (a), (b) and (d), 26 U.S.C.1952 ed. § 115, the pertinent parts of which provide as follows:

"§ 115. *Distributions by corporations—(a) Definition of dividend.*

"The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

"(b) *Source of distributions.*

"For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

* * * * * *

"(d) *Other distributions from capital.*

"If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * *"

In applying this statute to the facts in the instant case it is apparent that

whether or not the $3,909.01 in question is a "dividend" and taxable depends on whether at the date of distribution there existed any assets which could be attributed to "earnings and profits accumulated after February 28, 1913," as the other source of dividends—"the earnings and profits of the taxable year"—had been already exhausted. It would be logical to assume that the earnings and profits of the Hotel Kenmore Corp. would have no relation to the earnings and profits of the trust, they being two separate entities. However, it was decided in Commissioner of Internal Revenue v. Sansome, 2 Cir., 1932, 60 F.2d 931, 933, certiorari denied Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, that a corporate reorganization which did not result in the gain or loss in the value of the corporate stock being recognized for tax purposes "does not toll the company's life as continued venture * * * and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation." In that case the original enterprise was a corporation which had large accumulated earnings and profits. Its assets were conveyed to a new corporation, the stock of the new corporation being issued to the shareholders of the old corporation. The new corporation made no profits, and payments in distribution of its assets were made to the taxpayer who treated such payments as return of capital and not as income, maintaining that the distributions could not have been dividends as the corporation had never had any earnings and profits. The court, however, held that the first corporation's earnings and profits were attributable to the second corporation and consequently the second corporation's cash distribution was a taxable dividend to the extent of such earnings and profits.

It would appear to follow from the reasoning used in the Sansome case that the plaintiffs are entitled to recover, for logic would seem to require that if the prior business organization's profits and losses must be attributed to the successor corporation following a tax-free reorganization, similarly the prior enterprise's deficits should be attributed to the successor corporation. However, the Supreme Court in Commissioner of Internal Revenue v. Phipps, 1949, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771, dealt with this problem as it affected parent and subsidiary corporations and it is clear from its opinion that subtracting the deficit of a subsidiary business from the accumulated earnings and profits of the parent corporation is not a corollary to the carrying over of the subsidiary's earnings and profits to the parent. The Court stated in 336 U.S. at page 417, 69 S.Ct. at page 620 "that the Sansome rule is grounded not on a theory of continuity of the corporate enterprise but on the necessity to prevent escape of earnings and profits from taxation." See Commissioner of Internal Revenue v. Munter, 1947, 331 U.S. 210, 215, 67 S.Ct. 1175, 91 L.Ed. 1441.

In the Phipps case, a parent corporation had large accumulated earnings and profits but it owned several subsidiary corporations possessing deficits. By means of a tax-free reorganization the parent acquired the assets of its subsidiaries and later made pro rata cash distributions to its preferred stockholders. The Court held that the deficits of the subsidiaries could not be used to reduce the accumulated earnings and profits of the parent and consequently the cash distribution was in the nature of a taxable dividend.

In the instant case the district court said that the Phipps opinion did not repudiate the entire doctrine of continuity of venture that had been advanced in the Sansome case but that it superimposed on the Sansome rule the further principle that it is inconsistent with the idea of a tax-free reorganization that the Government should lose by the process. The district court further said that the Phipps opinion did not hold that the Government should gain through this process and consequently in the instant case the taxpayer would be allowed to

utilize the deficit of the defunct real estate trust in determining the taxability of cash distributions made by its corporate successor.

The plaintiff contends in support of the district court's decision that there is a crucial distinction between the situation presented in the instant case and that which was presented in the Phipps case. In the instant case the transferee, Hotel Kenmore Corp., had no accumulated earnings and profits at the time of the reorganization while in the Phipps case the parent corporation did possess accumulated earnings and profits at the date of the tax-free reorganization. Any distributions made by the parent corporation in the Phipps case would have undoubtedly been dividends and therefore taxable to the recipient if the reorganization had not taken place. The result in the Phipps case was necessary in order to prevent corporations which had earnings and profits from distributing these earnings and profits so as to avoid taxation merely by acquiring the assets of a business possessing a deficit. In the instant case, however, where there were no accumulated earnings and profits at the date of the reorganization of the ownership of the Hotel Braemore and Hotel Kenmore, the taxpayer could not have obtained a tax advantage through a reorganization. In other words, if the taxpayer's business had continued in its trust form and there had been no reorganization, the $3,909.01 distribution clearly would not have qualified as a dividend under the 1939 Internal Revenue Code and therefore would not have been taxable to the plaintiffs.

There is language in the Phipps opinion which tends to support the plaintiff's contention. At page 420 of 336 U.S. at page 621 of 69 S.Ct. it is said " * * * the effect of the Sansome rule is simply this; a distribution of assets that would have been taxable as dividends absent the reorganization or liquidation does not lose that character by virtue of a tax-free transaction." At page 421 of 336 U.S., at page 622 of 69 S.Ct.: "There has been judicially superimposed by the Sansome rule, with the subsequent explicit ratification of Congress, the doctrine that tax-free reorganizations shall not disturb the status of earnings and profits otherwise available for distribution."

Thus, the Supreme Court seems to emphasize the possession by one of the business entities involved in the tax-free reorganization of accumulated earnings and profits at the time of the reorganization. The nonexistence of such earnings and profits in the instant case clearly distinguishes it from the Phipps case. We consequently hold that a logical application of the Sansome rule, even as that rule has been defined by the Supreme Court in the Phipps case, compels us to conclude that in determining whether distributions made to its stockholders by the Hotel Kenmore Corp. are dividends, the deficit of its real estate trust predecessor must be taken into account.

The judgment of the district court is affirmed.