Charles **KAVANAGH** and Dale Roxburgh, Patricia Inez Roxburgh Webb and Charles Kavanagh, heirs of Inez R. Kavanagh, Deceased, Plaintiffs,

v.

**UNITED STATES of America**, Defendant.

Civ. 21–55.

United States District Court
D. Nebraska.

Oct. 4, 1960.

Monte Taylor, Hotz, Hotz & Taylor, Omaha, Neb., for plaintiff.

Jerome S. Hertz, Dept. of Justice, Washington, D. C., for defendant.

ROBINSON, Chief Judge.

This is an action to recover an alleged overpayment of taxes paid by the plaintiffs for the taxable years 1952 and 1953, with statutory interest thereon from the dates of payment.

The facts are established by stipulation as follows:

On January 15, 1931, one Jake Stivers applied for a patent on a knife sharpening device. Shortly thereafter he assigned all of his rights to the patent, when and if issued, to the Equity Finance and Investment Corporation and received therefor the promise of Equity to pay him $50 per week for the life of the patent. Prior to November 14, 1933, a receiver was appointed for Equity and on that date a patent was issued on the knife sharpening device to Mr. M. Hanley, the receiver.

Equity, at that time and until 1936, controlled two subsidiary corporations, the Sorensen Company of Nebraska and the H. G. Bell Company. The knife sharpening device, upon which Equity held the patent, was manufactured and serviced by the Sorensen Company. The patent was not carried on the books of Equity as an asset but was carried on the

books of Sorensen Company at the stated value of $50,000.

Prior to 1936, Arthur S. Sorensen controlled Equity and its two subsidiaries. On April 16, 1935, a patent on an improvement to the knife sharpening device was issued to Arthur Sorensen and it became the property of Equity.

The Sorensen Company came into existence in 1936 as the result of corporate reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. By final decree of the court all of the assets of three debtor corporations, known as Equity Finance and Investment Corporation, H. G. Bell Company and Sorensen Company, were transferred to the Bell-Sorensen Corporation. The latter corporation changed its name to the Sorensen Company some years later and is to be distinguished from the original debtor corporation. At the time of reorganization, the debtor corporations had deficits totaling approximately $415,000. This amount was owed to some 800 persons who held bonds issued by the Equity Finance and Investment Corporation. The plan of reorganization provided that the bondholders would be issued 55% of the 10,000 shares of no par value stock of the newly formed Bell-Sorensen Company. The remaining 45% of the stock was issued to Charles Kavanagh and a Mr. Jacobson in return for some $26,000 invested by them in the new corporation.

Among the assets transferred to the new corporation were the patent rights to the knife sharpening device and future operations of the Bell-Sorensen Corporation centered around the development and promotion of the knife sharpener. In 1942 the Sorensen Company amortized the cost of the patent by setting up on its books an account designated as reserve for depreciation of patent. Each year, from 1942, through 1951, this account was credited in the amount of $5,388.81, which, it is alleged represented one-seventeenth of the cost of the patent which was $91,609.78. No amortization deductions were taken for the year 1952. The total amount accumulated in the reserve account was $54,124.26, and this amount was distributed to the stockholders in October 1952 and October, 1953. In 1952, the taxpayer received $13,447.83 and in 1953, they received $15,070.66 as their pro rata share of the reserve account. These amounts were taxed as ordinary income to the taxpayers, the taxes were paid and the claims for refund were filed on the ground that the distribution of the reserve account was a return of capital and therefore not taxable as income. The claims were denied and this action was timely filed.

The issue in this case is, in determining whether or not a corporation has an accumulation of earnings or profits which would change what would otherwise be a return of capital into a taxable dividend, can there be taken into consideration the deficits of those corporations to which it succeeds as a result of reorganization proceedings. The sections of the Internal Revenue Code of 1939 involved are Sec. 115(a), (b), and (d), 26 U.S. C.A. 1952 ed., Sec. 22, the pertinent parts of which provide as follows:

"§ 115. Distributions by corporations—(a) Definition of dividend.

"The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *.

"(b) Source of distributions. For the purpose of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *."

It is plaintiff's position that the Sorensen Company could have no earnings and

profits within the meaning of the prohibition of Section 115(b), Internal Revenue Code, 1939, for the years in issue because of the $415,000 deficit carried over from the corporations which it succeeded. It is the government's position here that any deficit which Equity had may not be carried over to the Sorensen Company to reduce its earnings and profits.

■■ Under the present law, Internal Revenue Code of 1954, 26 U.S.C.A., 68A Stat. 124 § 381(a), (c), (2), the deficit can be carried over. There was no specific provision, however, in 1950, and we are cited to no specific case, nor have we found a case, passing upon this precise question.

Plaintiffs rely upon Commissioner v. Sansome, 2 Cir., 60 F.2d 931, 933, certiorari denied Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, where it was decided that a corporate reorganization which did not result in the gain or loss in the value of the corporate stock being recognized for tax purposes "does not toll the company's life as continued venture * * * and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation." In that case the original enterprise was a corporation which had large accumulated earnings and profits. Its assets were conveyed to a new corporation, the stock of the new corporation being issued to the shareholders of the old corporation. The new corporation made no profits, and payments in distribution of its assets were made to the taxpayer who treated such payments as return of capital and not as income, maintaining that the distributions could not have been dividends as the corporation had never had any earnings and profits. The court, however, held that the first corporation's earnings and profits were attributable to the second corporation and consequently the second corporation's cash distribution was a taxable dividend to the extent of such earnings and profits.

In United States v. Snider, 1 Cir., 224 F.2d 165, 167, the court states that it would appear to follow from the reasoning used in the Sansome case that the plaintiffs are entitled to recover, for logic would seem to require that if the prior business organization's profits and losses must be attributed to the successor corporation following a tax-free reorganization, similarly the prior enterprise's deficits should be attributed to the successor corporation. However, the Supreme Court in Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771, dealt with this problem as it affected parent and subsidiary corporations and it is clear from its opinion that subtracting the deficit of a subsidiary business from the accumulated earnings and profits of the parent corporation is not a corollary to the carrying over of the subsidiary's earnings and profits to the parent. The Court stated in 336 U.S. at page 417, 69 S.Ct. at page 620 "that the Sansome rule is grounded not on a theory of continuity of the corporate enterprise but on the necessity to prevent escape of earnings and profits from taxation." See Commissioner of Internal Revenue v. Munter, 331 U.S. 210, 215, 67 S.Ct. 1175, 91 L.Ed. 1441.

In the Phipps case, a parent corporation had large accumulated earnings and profits but owed several subsidiary corporations possessing deficits. By means of a tax-free reorganization the parent acquired the assets of its subsidiaries and later made pro rata cash distributions to its preferred stockholders. The Court held that the deficits of the subsidiaries could not be used to reduce the accumulated earnings and profits of the parent and consequently the cash distribution was in the nature of a taxable dividend.

Contrary to the present case, however, in the Phipps case the successor corporation owned all of the stock of the corporations whose assets it absorbed, both at the time of their liquidation and during the years prior thereto when the deficits of those corporations were incurred. Moreover, during those years the parent and subsidiaries filed consolidated income tax returns. This fact is noted by the court at page 412 of 336 U.S. in footnote

2, at page 617 of 69 S.Ct. where the Court states:

"It does not appear in what years occurred the subsidiaries losses which resulted in their deficits, or to what extent they were set off against the net income of the parent in consolidated return years. To the extent that such set-offs did exist, the basis of the subsidiaries stock to Nevada-California had been reduced and the losses realized by the parent and availed of for tax purposes prior to the liquidation."

I am of the opinion that because of the particular relationship that existed between the corporations in the Phipps case, the Court's refusal to permit the parent corporation to offset the deficits of the subsidiary corporation against its own income in that case cannot be interpreted as authority for denying the plaintiffs relief in the present case. Furthermore, in Snider v. United States, D.C., 125 F.Supp. 352, affirmed 1 Cir., 224 F.2d 165, the district court said that the Phipps decision did not repudiate the entire doctrine of continuity of venture that had been advanced in the Sansome case, but that it superimposed on the Sansome rule the further principle that it is inconsistent with the idea of a tax-free reorganization that the Government should lose by the process. The court said that the Phipps opinion did not hold that the Government should gain through this process and consequently the taxpayer should be allowed to utilize the deficit of the defunct corporation in determining the taxability of cash distributions made by its corporate successor.

There is a distinction between the situation presented in this case and that which was presented in the Phipps case. In this case Equity had no accumulated earnings and profits at the date of the tax-free reorganization. Any distribution made by the parent corporation in the Phipps case would have been dividends and therefore taxable to the recipient if the reorganization had not taken place.

The result in the Phipps case was necessary in order to prevent corporations, which had earnings and profits, from distributing these earnings and profits so as to avoid taxation merely by acquiring the assets of a business possession a deficit. United States v. Snider, supra, 224 F.2d at page 168.

In the present case there were no accumulated earnings and profits at the date of the reorganization and the taxpayers could not have obtained a tax advantage through reorganization. If Equity's business had continued and there had been no reorganization, the distributions in 1952 and 1953 would not have qualified as dividends under the 1939 Internal Revenue Code and therefore would not have been taxable to the plaintiffs.

It was pointed out in the Snider case, 224 F.2d at page 168: "There is language in the Phipps opinion which tends to support the plaintiff's contention. At page 420 of 336 U.S., at page 621 of 69 S.Ct. it is said ' * * * the effect of the Sansome rule is simply this; a distribution of assets that would have been taxable as dividends absent the reorganization or liquidation does not lose that character by virtue of a tax-free transaction.' At page 421 of 336 U.S., at page 622 of 69 S.Ct.: 'There has been judicially superimposed by the Sansome rule, with the subsequent explicit ratification of Congress, the doctrine that tax-free reorganizations shall not disturb the status of earnings and profits otherwise available for distribution.'

"Thus, the Supreme Court seems to emphasize the possession by one of the business entities involved in the tax-free reorganization of accumulated earnings and profits at the time of the reorganization. The nonexistence of such earnings and profits in the instant case clearly distinguishes it from the Phipps case. * * *."

I have concluded that in determining whether the distributions made to its stockholders by the Sorensen Company are dividends, the deficit of its predecessor corporations must be taken into account. Judgment will be entered for the

plaintiffs. Counsel for plaintiffs will prepare a form of judgment, submit it to counsel for defendant for approval as to form, and present it to the Court within thirty days from the date hereof.