UNITED STATES of America, Appellant,

v.

Charles KAVANAGH, Appellee.

No. 16843.

United States Court of Appeals Eighth Circuit.

Oct. 16, 1962.

Rehearing Denied Nov. 28, 1962.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C., for appellant and Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, I. Henry Kutz and Michael A. Mulroney, Attys., Dept. of Justice, Washington, D. C., and Theodore L. Richling, U. S. Atty., and Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., on the brief.

William J. Hotz, Jr., Omaha, Neb., for appellee and William J. Hotz, Hotz, Hotz & Taylor, Omaha, Neb., on the brief.

Before VOGEL and RIDGE, Circuit Judges, and DEVITT, District Judge.

RIDGE, Circuit Judge.

This is an appeal from a judgment for the appellee Charles Kavanagh (hereinafter called "plaintiff") for $13,816.00, plus interest, entered on March 13, 1961.[1]

The plaintiff sues to recover an alleged overpayment of taxes for the taxable years 1952 and 1953 on the theory that amounts distributed to him as a stockholder by a corporation were a return of capital, rather than income, and hence the tax assessed on such amounts was improper. The facts were established by stipulation and written documentary evidence and are in part summarized in the memorandum opinion of the District Court. 187 F.Supp. 430 (Neb.1960). The stipulation of facts is set out in full in the footnote.[2]

1. It is established that Charles Kavanagh succeeded to all the rights of Inez R. Kavanagh, deceased, in this action. Therefore he proceeds alone as appellee herein.

2. "The parties to the above action, through their respective attorneys, hereby agree that for the purpose of this case the following statements may be taken as true, subject, however, to the right of either party to object to the relevancy or materiality of any such fact and subject to any other objection which either party may specifically reserve in this stipulation.

"I. On January 15, 1931, an inventor by the name of Jake Manfield Stivers applied for a patent on a certain knife sharpening device. Shortly after filing this application said Jake Manfield Stivers assigned all his right to said patent, when and if issued, to the Equity Finance and Investment Corporation (hereinafter called 'Equity') and received therefor the promise of Equity to pay him $50 a week for the life of the patent.

"II. Prior to November 14, 1933, a receiver was appointed for Equity, and on that date the above referred to patent was issued to said receiver, Mr. Hanley.

"III. Equity, at that time and until 1936, controlled two subsidiary corporations. One was called Sorensen Company of Nebraska and the other was called the H. G. Bell Co. (fol.11). The knife sharpening device, upon which Equity held a patent, was manufactured by Sorensen Co. of Nebraska. Although this patent should have been carried as an asset on the books of Equity, it was not but rather was carried on the books of Sorensen Co. of Nebraska at the stated value of $50,000.

"IV. Prior to 1936 one Arthur S. Sorensen controlled Equity and its two subsidiaries. On April 16, 1935, a patent on an improvement on the knife sharpening device was issued to said Arthur S. Sorensen and became the property of Equity.

"V. Prior to 1936 Equity had sold its own bonds to the general public. By the terms of these bonds they were to be secured by certain property of Equity pledged in trust for this purpose. These trusts were violated; Equity became insolvent and neither bondholders nor general creditors could be paid.

"VI. In 1936 proceedings were commenced under Section 77B of the Federal Bankruptcy Act to have Equity adjudged a bankrupt. Attached hereto as Exhibit 1 is an order entered in this proceeding on April 26, 1936, and entitled 'Order of Conformation of Plan of Reorganization.' Attached hereto as Exhibit 2 is a

The District Court stated the issues (187 F.Supp. l. c. 431) as follows:

"The issue in this case is, in determining whether or not a corporation has an accumulation of earnings or profits which would change what would otherwise be a return of capital into a taxable dividend, can there be taken into consideration the deficit of those corporations to which it

copy of the Final Decree which was entered in this proceeding on July 22, 1940. Exhibits 1 and 2 are the best indication available to the parties of the facts surrounding and involved in this bankruptcy proceeding.

"VII. At the conclusion of these bankruptcy proceedings all the remaining assets of Equity, Sorensen Co. of Nebraska and H. G. Bell Co. were transferred to the H. G. Bell Corporation (hereinafter called 'Bell'). Bell had authorized capital stock consisting of 10,000 shares of no-par common. As shown in Exhibit 1 of this stipulation, 55% of these shares were issued, by way of interim certificates, to the (fol.12) old bondholders of Equity and the remaining 45% were issued, by way of interim certificates, to Mr. Charles Kavanagh, one of the plaintiffs herein, and Mr. H. L. Jacobson in equal portions. The obligation to pay Mr. Stivers $50 a week for the referred-to patent was assumed by the Bell-Sorensen Corporation.

"VIII. Among the assets transferred to the new corporation were the patent rights to the knife sharpening device. This was the only asset of any significant value, and future operations of the corporation centered around the development and promotion of the knife sharpener. The sharpeners were placed in restaurants and other types of businesses throughout the country by representatives of the corporation, and an annual charge was made for their use. Mr. Kavanagh was president of the corporation for several years, and he remained in that capacity until 1956 when he sold all of his stock.

"IX. Attached hereto as Exhibit 3 is a copy of a balance sheet of Bell for its fiscal year ended March 31, 1941. This document was not taken directly from the corporation's books, but rather from its federal income tax return for that period. This is the earliest balance sheet of this corporation presently available to the parties.

"X. For its fiscal year ended March 31, 1941, Bell deducted as part of its cost of goods sold the amount of $2,600. This item was labeled 'royalties.' The corporation income tax return of Bell for its fiscal year ended March 31, 1941, is the only such return of the corporation prior to that of its fiscal year ended March 31, 1943, which the parties have been able to locate.

"XI. At some time prior to 1941 litigation ensued between Mrs. J. M. Stivers and Bell concerning the $50 weekly payments Bell was obligated to make, which payments (fol.13) are referred to in Exhibit 1 attached to this stipulation and in paragraph VII of this stipulation. On August 26, 1941, this litigation was settled for $10,000, which Bell was to pay to Mrs. J. M. Stivers. Of this amount $5,000.00 was immediately paid in cash and the remaining $5,000 was to be paid at the rate of $100.00 a month.

"On its federal income tax returns for each of its fiscal years ended March 31, 1943, March 31, 1944, and March 31, 1945, Bell deducted the amount of $1,200 as part of its cost of goods sold. For its fiscal year ended March 31, 1946, Bell deducted as part of its cost of goods sold the amount of $700. Each such deduction was designated 'royalties.'

"XII. On their federal income tax returns for the period prior to April 1, 1942, neither Bell nor Equity nor Sorensen Corporation of Nebraska ever claimed any amortization deductions on account of the patents referred to in paragraphs I, IV and VIII of this stipulation. For its fiscal year ended March 31, 1943, Bell claimed an amortization deduction for the patent. On its federal income tax return for its fiscal year ended March 31, 1943, Bell showed the patent as having a value of $81,609.78 and claimed thereon an amortization deduction of $5,388.81, being one-seventeenth of $91,609.78, and a 'reserve for amortization of patent' account was credited in the amount of $5,388.81. Prior to this time Bell's books did not carry this patent at any value. With its return for this fiscal year Bell attached a statement setting forth the items which it claimed constituted the value of this patent. A copy of that statement entitled 'Statement Supplementing Schedule "J"' is attached hereto as Exhibit 4. The original books of the corporation which would tend to verify or rebut the facts contained in the schedule cannot be located and are not available to the parties. The defendant objects to the admissibility of said statement into evidence to prove the truth of the matters assert-

succeeds as a result of reorganization proceedings"

under Section 77B of the Bankruptcy Act, 48 Stat. 911.[3]

The District Court found that one of the debtor corporations at the time of the reorganization in question—Equity, had a deficit totaling approximately $415,000.00 and held that this deficit could be considered in determining whether the distribution by Bell-Sorensen Company, the newly reorganized corporation, in 1952 and 1953 was, as claimed by the taxpayer, a return of capital

ed therein, as it contends that said statement is incompetent for that purpose.

"During its fiscal year ended March 31, 1946, Bell changed (fol.14) its corporate name to The Sorensen Company.

"XIV. For each of the nine succeeding fiscal years which fell within the period, April 1, 1943 to March 31, 1952, there was claimed on the Sorensen Corporation income tax returns a deduction of $5,388.81 for depreciation of patent. For each of these same years, as a part of the same entry, the amount of $5,388.81 was credited to an account designated as a reserve for depreciation of patent. On the corporation return for the fiscal year commencing April 1, 1952, and ending March 31, 1953, a deduction of $236.16 was claimed for depreciation of patent. This entry brought the total amount of the reserve for depreciation of patent account to $54,124.26.

"In October, 1952, the Sorensen Company made a distribution to stockholders which it designated as being from the reserve for depreciation of patent account, and the plaintiffs received $13,447.83 as their pro rata share. In October, 1953, the corporation made another distribution which was designated as the balance of the reserve account, and the plaintiffs received $15,080.66 as their pro rata share. In addition, the taxpayers received other distributions from the corporation in the amount of $2683.73 during 1952 and $2691.19 during 1953, which amounts the taxpayers listed on their returns for the respective years as dividends taxable as ordinary income, and there is no dispute as to the taxability of these amounts.

"The amount claimed as a deduction for patent depreciation for its fiscal year ended March 31, 1953, was disputed by the Internal Revenue Service, which dispute has not been resolved. Similar deductions for earlier years were not disputed and at the time the claimed deduction for the fiscal year ended March 31, 1953, was disputed, adjustments for these earlier years were barred by the statute of limitations.

"Attached hereto as Exhibits 5 and 6, respectively, are the Sorensen Corporation's federal income tax returns for its fiscal years ended March 31, 1953, and March 31, 1954. Attached hereto as Exhibit 5(a) is the return for the fiscal year ended March 31, 1953, as amended. These returns accurately reflect the information found on the books of that corporation. Said returns were signed by Charles (fol.15) Kavanagh, one of the plaintiffs herein.

"XVI. Prior to the year 1953 said Charles Kavanagh had acquired approximately 54% of the stock of The Sorensen Company. His wife, Inez R. Kavanagh, held 38 shares, the said remaining 46% of the stock was held by approximately 800 other stockholders.

"On March 15, 1954, the taxpayers filed a return for the year 1952 with the Director of Internal Revenue at Omaha, Nebraska, and on March 15, 1953, paid to that office the sum of $13,105.84, to be applied on their federal income tax liability for 1952. On April 27, 1953, the taxpayers filed a claim for refund with the Director of Internal Revenue at Omaha, Nebraska, a copy of which is attached hereto as Exhibit 7.

"On March 15, 1954, the taxpayers filed a return for the year 1953 with the Director of Internal Revenue at Omaha, Nebraska, and paid to that office the sum of $12,355.64 as federal income taxes for the year 1953, $1,329.20 of which was paid on June 18, 1954 and the balance of which was paid with their return. On April 23, 1954, the taxpayers filed a claim for refund with the Director of Internal Revenue at Omaha, Nebraska, a copy of which is attached hereto as Exhibit 8.

"The claims for refund were never officially rejected by the Internal Revenue Service; however, suit was not filed herein until six months had elapsed from the time of filing the claims for refund. Subsequent to the filing of the complaint, Inez R. Kavanagh died, and the present plaintiffs, being the sole and only heirs at law of Inez R. Kavanagh, were substituted as party plaintiffs by order of this court, dated October 27, 1958."

3. For full text of this Act, now repealed, see 6 Collier on Bankruptcy, 14th Ed. 64 et seq.

and not taxable as dividends under Section 115 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115, as claimed by the Government. That section of the 1939 Code to the extent pertinent, is set out in the footnote.[4]

A succinct statement of appellant's position is that "insufficient evidence existed in the record to warrant the decision reached by the District Court, or, assuming that there was sufficient evidence, the District Court erred in applying the law to the facts as found by it." From the stipulated facts and documentary exhibits received in evidence and the only reasonable inferences to be drawn therefrom, we are of the opinion that the Government's position must be sustained.

"* * * where, as here, the case is submitted to the Court upon stipulated facts and documentary material and there is no conflict in the evidence, or in the inferences which reasonably can be drawn therefrom, this Court may rule upon the question of law presented and is not restricted by the limitations of Rule 52(a), F.R.Civ.Proc." United States v. Mississippi Valley Barge Line Co., 285 F.2d 381, 388 (8 Cir.1960).

A Court of Appeals has the power to set aside a District Court's findings of fact where it is "clearly erroneous." The Supreme Court has pointed out that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U. S. Gypsum Company, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In the case at bar it appears that neither party was able to secure all the pertinent facts with reference to the corporate reorganization in question. But these facts clearly appear from the stipulated facts and documentary evidence:— there were three predecessor corporations * * * i. e., Equity Finance and Investment Corporation, the parent company which had an outstanding issue of bonds prior to reorganization (herein referred to as "Equity") and two subsidiaries of Equity, the Sorensen Company of Nebraska and H. G. Bell Company, all three of which corporations were reorganized under Section 77B, supra, as the Bell-Sorensen Company. At the time of reorganization Bell-Sorensen was authorized to issue 10,000 shares of no-par stock. Appellee Kavanagh and one Jacobson contributed $23,700.00 to the reorganization of Bell-Sorensen. Neither Kavanagh nor Jacobson appears to have been a stockholder of any one of the three bankrupt corporations supra. Aside from the $23,700.00 above mentioned, the only other asset of any consequence of Bell-Sorensen in reorganization was a patent device for sharpening knives. From the record evidence, the only obligation of the three bankrupt corpora-

---

4. "Sec. 115 (as amended by Sec. 214(b), Revenue Act of 1939, supra), DISTRIBUTIONS BY CORPORATIONS.

"(a) *Definition of Dividend.*—The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

"(b) *Source of Distributions.*—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

"(d) *Other Distributions from Capital.*—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property."

tions assumed by Bell-Sorensen Company as a result of reorganization was that due to be paid to one Stivers as royalty * * Stivers being the owner of the patent device for sharpening knives.

Under the Plan of Reorganization "General Creditors" of the three bankrupt corporations were to be "paid 33⅓% of the face amount of their claims." Payment of such claims was made by the Trustee out of the $23,700.00 above mentioned, and according to the plan of reorganization, upon payment thereof the three "debtor" corporations were "forever released" from the claims of such creditors, as was "the reorganized corporation, and all its assets from any and all further claims from said parties." As to the "bondholders" of Equity, the "Plan of Reorganization" provided that when 55% of the capital stock of the reorganized corporation * * * Bell-Sorensen Company * * * was distributed to them, such stock was to be received "in full and complete satisfaction and payment for their said claims." Kavanagh and Jacobson received 45% of the stock of Bell-Sorensen Company as a consequence of their payment of $23,700.00 to capital of that corporation. The plan of reorganization recognized no equity in the stockholders of any of the three bankrupt corporations. The final decree in the 77B bankruptcy proceedings was entered of record on July 22, 1940, approving a 1936 order confirming the "Plan of Reorganization" of Bell-Sorensen Company in the above respects, among other things, and the Trustee in Bankruptcy was discharged.

After reorganization was completed the patent rights to the knife sharpening device constituted the only asset of significant value of the Bell-Sorensen Company. Its subsequent operations centered around the development and promotion thereof. The earliest and only record available revealing the financial condition of the Bell-Sorensen Company is a corporate income tax return for the year 1941. The income tax return for that year dated 3/31/41 reveals Total Assets of $64,759.76; Capital Stock (10,000 shares of no-par common) valued at $52,500.00, and Earned Surplus and Undivided Profits of $9,770.68. Neither "Net Income" nor "Federal Income Taxes Paid" in that year is revealed in that return.

Beginning in the year 1942, Bell-Sorensen for the first time claimed amortization deductions for patent rights to the knife sharpening device in its federal income tax return. The amortization value thereof was fixed at $91,609.78, with seventeen (17) years of useful life. Prior to the year 1942 Bell-Sorensen's books did not carry the patent at any value. The stipulation is that "although this patent should have been carried as an asset on the books of Equity, it was not but rather was carried on the books of the Sorensen Company of Nebraska at the stated value of $50,000." However, in 1942 and thereafter, an annual charge of $5,388.81 was deducted on Bell-Sorensen's federal income tax returns and a like amount was credited on its books to amortization reserve. On the corporate return for the fiscal year ending March 31, 1953 * * * $236.16 was claimed as depreciation of patent rights and a like sum was added to the reserve account, bringing its accumulated patent depreciation amortization balance to $54,124.26.

Prior to 1953, appellee (Kavanagh) had acquired about 54% of the 10,000 outstanding shares of Bell-Sorensen stock. Except for 38 shares held by his wife, Inez R. Kavanagh, the remaining 46% of such stock was held by about 800 other shareholders, presumably the previous bondholders of Equity. In October 1952 and October 1953, Bell-Sorensen made distributions to its shareholders totaling $54,124.26. It designated these distributions as being from the reserve for depreciation of patents account. In 1952, the appellee (Kavanagh) received $13,477.83, and in 1953, he received $15,070.26, as his pro rata share of such distributions. In addition, he received $2,683.43 in 1952 and $2,691.19 in 1953 from Bell-Sorensen "which was listed in his return as dividends taxable as ordinary income." This suit for refund is to

recover the amount of taxes paid by Kavanagh as a consequence of the distributions paid to him by Bell-Sorensen, designated to have been made from the reserve for depreciation of patents account. Such was the theory of claim for refund filed by the taxpayer and alleged as the premise of the claims asserted in his complaint.[5]

In the light of the foregoing it is incomprehensible for us to reason the theory of any issue as to "deficit-carry-over" which is the premise upon which the District Court entered judgment in the case at bar in favor of Kavanagh. Seemingly, counsel for this taxpayer have like confusion of mind, for we have minutely searched the "Questions to be Answered on this Appeal" as propounded by them in their briefs as well as the argument made thereon for some positive statement of fact, pointed out and to be found in the record of this case, establishing any defined "deficit carry-over" that Bell-Sorensen Company assumed in reorganization, which any bondholder or other person could legally use or set up as an offset against "earnings" of that Company in years subsequent to the 77B bankruptcy reorganization proceedings.

■ Under Point II of his "Statement of the Case" appellee asserts:

"1. It is the distribution of a reserve for depletion of * * * patent, to all the stockholders of the reorganized corporation in 1952 and 1953 under the statutes cited, that the reserve for depletion was erroneously taxed as if earned profits income.

"2. The Court below under its findings of facts of record * * *

held that under said Section 77–B of Chapter X of the Amendment to the Bankruptcy Act, Section 207, Title 11, U.S.C.A. and I.R.C.1939, Sec. 115(a), (b) and (d) 26 U.S.C.A., 1952 Ed. Sec. 22 of the Internal Revenue Code, the sums for which the judgment for refunds was granted appellee were free from Federal Income Tax because it was tax free distribution of the reserve for patent depletion distributed at a time when the earnings were and had been distributed separately * * *."

Immediately following and as a part of the foregoing quotation it is said:

"(and when there was in fact no taxable earnings or profits because of the offsetting loss carryover permitted under the law applicable to all similar reorganizations under the above cited statutes.")

The abstractness of the latter part of the above statement which we have separately quoted and enclosed in brackets is demonstrative of appellee's attempt to attach to his pleaded theory of claim for refund the misconception of issues and applicable law which we find in the District Court's opinion in the case at bar. It is so obvious to us that "offsetting a loss carryover permitted under * * * law applicable" is so inapposite to the pleaded theory of a claim of "tax free distribution of the reserve for patent depletion" we shall not follow either of these parties in their arguments concerning "deficit carryover" as made in their briefs resulting from the Section 77B supra reorganization appearing in this case. This because we are of the opinion that what was said by the Supreme Court of the United States in Helvering v. Cement

5. In Count One (1) of the complaint it is alleged that the plaintiff executed Form No. 843 for refund and the basis of the claim therefor was that "said amount was not income, but was a withdrawal of capital from the corporation that paid it to the taxpayers as stockholders in the * * * Sorensen Company * * *. There was an accumulation of the depletion of a patented article owned by said corporation, and it was the accumulation of this annual write-off or deduction that constituted the basis for the return to the stockholders and taxpayers herein of said $13,447.83 paid them in the year 1952. Said (sum) was a non-taxable item and should not have been reported as income." Similar allegations were made in Count 2, as to the $12,355.64 reported as income in Kavanagh's tax return for the year 1953.

Investors, 316 U.S. 527, l. c. 532, 62 S.Ct. 1125, l. c. 1127, 86 L.Ed. 1649 (1942) demonstrates that there could not have been any "deficit carryover" growing out of the reorganization to be considered in the instant proceeding, namely:

"In the case of reorganizations of insolvent corporations, the creditors have the right to exclude the stockholders entirely from the reorganization plan. *When the stockholders are excluded and the creditors of the old company become the stockholders of the new, 'it conforms to realities to date their equity ownership' from the time when the processes of the law were invoked 'to enforce their rights of full priority.'* Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179 [62 S.Ct. 540, 86 L.Ed. 775]. Under that approach, the ownership of the equity in these debtor companies effectively passed to these creditors at least when § 77B proceedings were instituted. But however their interest in the property may be described, it clearly was an equitable claim in or to it. It was that equitable interest with which the plan dealt. The transfer of the properties of the debtor companies to the new corporation was made pursuant to that plan. The plan was approved by the requisite percentage of these creditors, as required by § 77B(e) (1) of the Bankruptcy Act. Thus it is fair to say that the property transferred was property in which the creditors had an equitable interest, and that the transfer was made with their authority and on their behalf."

No financial statement appears in the record of this case which reveals any "deficit" carried over from the three bankrupt corporations into the corporate accounts of Bell-Sorensen in reorganization. Hence, neither the rule in Commissioner of Internal Revenue v. Sansome, 60 F.2d 931 (2 Cir. 1932) cert. den. Sansome v. Burnet, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, nor the reasoning of the Court in United States v. Snider, 224 F.2d 165 (1 Cir. 1955) relied on by the District Court are applicable to the stipulated facts and documentary evidence here. Cf. Humpage v. C. I. R., 17 T.C. 1625.

When the taxpayer in the case at bar purchased an equity interest in the reorganized company, Bell-Sorensen, the equity interest he received is to be measured by his proportionate share of that corporation's net worth at that time. He received no equity in the old debtor corporations. Bell-Sorensen received nothing from the debtor corporations except patent rights and what remained of the $23,700.00 after the Trustee in Bankruptcy paid general creditors of the three debtor corporations 33⅓% of the amount of their claims as allowed and provided in the plan of reorganization approved by the bankruptcy court. The former bondholders of "Equity" received stock in Bell-Sorensen "in full and complete satisfaction and payment of their said claims." No "deficit carryover" could possibly have followed from the old to the new reorganized company from the standpoint of accounting, nor legally, as a consequence of the 77B proceedings.

The only inference to be made from the stipulated facts and documentary evidence in the case at bar is that Bell-Sorensen started out with a new financial slate. Thereafter it had earnings. From such earnings, in part, it established a reserve for depletion of the patent in question. It is stipulated * * * "The original books of (Bell-Sorensen) which would tend to verify or rebut the facts in the schedule (of depreciation) cannot be located and are not available to the parties." The Bell-Sorensen Corporation's tax returns, stipulated by the parties to reflect accurately the entries on the books of that corporation, show that in 1952 it had a net income of $17,153.70 and in 1953 a net income of $12,236.73, on which it paid income taxes in each such year. It is further stipulated that the taxpayer received distributions of $2,683.73 in 1952 and $2,691.19 in 1953, which are admitted to be taxable to him as dividends. If such dividends repre-

sented a 54% distribution to this taxpayer it is manifest that Bell-Sorensen in each of the years in question had additional "earnings and profits" from which additional dividends could have been distributed.

 The taxpayer in the case at bar had the burden of proving that the distributions in question were not made from current earnings or profits in the years of distribution and that there were no other accumulated earnings or profits from which such distribution could be attributed. All that appellee established is that the Bell-Sorensen Company catalogued the distributions in question to a pro rata share of distribution from a reserve for depreciation of the patent account. In the light of the earnings and "net income" of Bell-Sorensen for the years 1952 and 1953 and the provisions of Section 214(b) of the Revenue Act of 1939 (26 U.S.C.A. § 115(b), 1952 ed.) we do not consider he has sustained the burden of proof cast upon him. That section of the Code provided in part:

"For the purposes of this chapter every distribution is made out of earnings or profit to the extent thereof, and from the most recently accumulated earnings or profits."

Cf. Beretta v. Commissioner, 1 T.C. 86, affirmed 141 F.2d 452 (5 Cir. 1944) cert. den. 323 U.S. 720, 65 S.Ct. 50, 89 L.Ed. 579; Wilson v. Commissioner, 27 T.C. 976, affirmed per curiam 255 F.2d 702 (5 Cir. 1958); United States v. Anderson, 269 U.S. 422, 423, 46 S.Ct. 131, 70 L.Ed. 347 (1926); Paschal v. Blieden, 127 F.2d 398, 403 (8 Cir. 1942).

"A reduction in par value of capital stock upon a pro rata payment to each stockholder without an intent to wind up its affairs does not render such payment a distribution in partial liquidation, and in the absence of such intent and in the absence of the complete cancellation or redemption of a part of the stock by such payment the payment is taxable as income." Beretta v. C. I. R., 141 F.2d 452–455 (5 Cir.).

Cf. Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 419, 69 S.Ct. 616, 93 L.Ed. 771 (1949).

The judgment appealed from is reversed.