HAL PRICE HEADLEY AND GENEVIEVE M. HEADLEY (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88174. Promulgated April 20, 1938.

*James Park, Esq.,* and *Wallace Muir, Esq.,* for the petitioners. *Conway N. Kitchen, Esq.,* for the respondent.

#### OPINION.

HILL: This proceeding is for the redetermination of a deficiency in income tax for the year 1934 in the amount of $215.88. The sole issue raised by the pleadings is whether respondent erred in disallowing a deduction of $4,700 for attorneys' fees in the circumstances referred to below. The facts, while not stipulated, are not in dispute.

Petitioners are husband and wife, residing in Fayette County, Kentucky, and for the taxable year filed a joint income tax return. The husband, Hal Price Headley, will for convenience hereinafter be referred to as petitioner.

Petitioner for many years has been engaged in the business of farming, and the breeding, rearing, and raising of thoroughbred horses. The major portion of petitioner's income was derived from his horse business. In the taxable year, out of a total gross income of $123,651.65, the amount of $88,940.75 was realized from the horse business, and for the years 1928 to 1936, the gross income from the

horse business constituted 74.3 percent of petitioner's total gross income.

On August 18, 1933, in the District Court of the United States for the Northern District of Illinois, Eastern Division, an indictment was returned against petitioner and one Marvin Hardin, a colored employee working as a groom in petitioner's stables. The indictment alleged violation of the Harrison Narcotics Act and the Narcotic Drugs Import and Export Act, as amended, and contained three counts. The first count charged that the defendants on July 28, 1933, at Arlington Park Race Track, Arlington Heights, Illinois, unlawfully purchased heroin, a derivative of opium; the second count charged that the defendants, at the same place and on the same date, fraudulently and knowingly received, concealed, bought, and facilitated the transportation and concealment of heroin, unlawfully imported into the United States; and the third count charged that the defendants, on March 6, 1933, and thereafter, at Miami and Hialeah Park, Florida, and elsewhere, conspired to commit the offenses alleged in the first two counts. The indictment further charged that it was a part of the alleged conspiracy that the defendants were to receive, conceal, buy, sell, and facilitate the transportation and concealment of heroin "for the purpose of administering same to race horses."

The following overt acts were alleged in the indictment: That the defendants, at approximately 45 minutes before the post time in each case, administered heroin as follows: (1) at Hialeah Park, Florida, on March 6, 1933, to a race horse named Liquer; (2) at Arlington Park Race Track, on July 12, 1933, to a race horse named Cabouse; (3) at Arlington Park Race Track on July 17, 1933, to a race horse named Technique; (4) at Arlington Park Race Track on July 18, 1933, to a race horse named Big Beau. It was further alleged that on July 28, 1933, at Arlington Park Race Track, Arlington Heights, Illinois, the defendants had in their possession and under their control, in Barn P, a large quantity of heroin.

Under the rules of racing in Kentucky, if petitioner had been convicted of the offenses charged in the indictment above referred to, he and his horses would have been ruled off the tracks not only in Kentucky but in all other states of the United States and in England; his business would have been ruined, and he would not have been permitted to attend races even as a spectator on any race track in the United States. In the event of conviction, petitioner could have sold his stallions and brood mares, but could not have sold his race horses, without the consent of the racing association of Illinois.

Petitioner employed counsel to defend him against the above mentioned indictment, and during the taxable year 1934 paid the sum of $4,700 for attorneys' fees and expenses.

Petitioner's trial was continued from time to time on motion of the Government until December 2, 1936, when petitioner filed a motion to suppress certain evidence. The motion was granted, and thereafter the case was dismissed for want of prosecution.

The question presented here is whether or not, under the circumstances above set forth, the amount of $4,700 is deductible from petitioner's gross income as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Sec. 23 (a), Revenue Act of 1934. Respondent admits that $4,700 was paid by petitioner in 1934, but contends that the amount was not an expense of carrying on his trade or business.

Similar questions have been considered by the Board and the courts in numerous cases. In *Welch* v. *Helvering*, 290 U. S. 111, the Court pointed out that:

Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions.

We shall make no attempt here to discuss generally the numerous decisions bearing on the question at issue. Instead we shall refer briefly only to cases which on the facts and by analogy approach nearest to the instant proceeding.

*Kornhauser* v. *United States*, 276 U. S. 145, lays down the rule that where a suit or action against a taxpayer is directly connected with or, as otherwise stated, proximately resulted from his business, the expense incurred is a deductible business expense, citing with approval *Sarah Backer et al., Executors*, 1 B. T. A. 214.

In *Commissioner* v. *People's Pittsburgh Trust Co.*, (C. C. A., 3d Cir.), 60 Fed. (2d) 187, affirming 21 B. T. A. 588, it was held that expense incurred by a corporation executive in successfully defending himself against a criminal charge involving fraud in making the corporation's income tax return was deductible in his personal return as an ordinary and necessary business expense. The court said:

While the expense for which claim was made might be deemed personal, in the sense that the outlay was made by the taxpayer in defending himself from a charge which, if proved, would have subjected him to imprisonment or fine or both, yet it was an expense made necessary by the nature of the taxpayer's business. * * * The expenses incurred and paid out by him were, in our view, made necessary because a criminal quality was attributed to acts which were performed by the taxpayer in carrying on his trade or business.

In *Commissioner* v. *Continental Screen Co.* (C. C. A., 6th Cir.), 58 Fed. (2d) 625, affirming 19 B. T. A. 1095, attorneys were employed to represent the corporation before the Federal Trade Commission on a charge of operating in violation of the Sherman Anti-Trust Act,

with the result that an order was entered dismissing the complaint. The fees paid to the attorneys were held deductible. The court said:

The proceeding before the Trade Commission was undoubtedly an "action" against respondent [taxpayer] which was "directly connected with" or which "proximately resulted" from its business. * * * The life of the business was endangered. Under such circumstances respondent followed the very natural and ordinary procedure suggested by the vital necessity of the situation. It employed counsel to protect its interest and agreed to pay for their services. Any other course upon the part of its board of directors would have been unusual and would, no doubt, have subjected them to well founded criticism by its stockholders.

See also *National Outdoor Advertising Bureau* v. *Helvering* (C. C. A., 2d Cir.), 89 Fed. (2d) 878, where the court cited with approval the decision in the *Continental Screen Co.* case, *supra*, on the ground that "the taxpayer's resistance was there justified, and was 'necessary' to the protection of his business."

In *Louisiana Jockey Club, Inc.*, 13 B. T. A. 752, the petitioner paid a note which had been assumed by the city of New Orleans as a part of the purchase price of land. Petitioner paid the note in order to obtain immunity from interference by city authorities with the conduct of its business. The Board held that the amount so paid was a legal deduction from gross income as a necessary expense, saying at page 757:

We can not doubt from the evidence that the petitioner paid the money under a threat that it would not be permitted to operate its race track unless the payment was made. It was essential that it make it in order to continue in business.

In *Citron-Byer Co.*, 21 B. T. A. 308, the petitioner was engaged in the junk business, and purchased certain coils of wire from the Government. The Government agents delivered what the Government contended and petitioner apparently admitted was another and more expensive kind. The Government demanded additional pay and received it. Thereafter, petitioner and its two officers were indicted for conspiracy to defraud the Government in the transaction. This indictment was dismissed for want of prosecution. A second indictment was found, and upon hearing was quashed for lack of proof. The Board held that the alleged offenses arose directly out of taxpayer's business, and, the court having determined that no such offenses had been committed, the fees paid by the petitioner to its counsel to defend against the indictments were deductible as ordinary and necessary expenses of its business.

Of course it is well settled that attorneys' fees paid in successfully defending either a civil action or a criminal charge of a purely personal nature not directly connected with the taxpayer's business, or proximately resulting therefrom, are not deductible. *Pantages*

*Theater Co.* v. *Welch* (C. C. A., 9th Cir.), 71 Fed. (2d) 68; *George L. Rickard*, 12 B. T. A. 836; *Frank G. Robins*, 8 B. T. A. 523.

We think the present case comes squarely within the decisions first above cited. Petitioner was charged with having committed criminal acts in the process of carrying on his business. The offenses alleged arose directly out of the conduct of his business; they were "directly connected with" or "proximately resulted from" his business. If he had been found guilty as charged, his business would have been ruined. At an expense of $4,700 he successfully defended himself against the accusations; the indictment was dismissed for want of prosecution. That he was innocent of the offenses charged is a legal presumption. In our opinion, the deduction claimed is properly allowable.

Respondent relies upon *Welch* v. *Helvering, supra.* There a grain commission agent made payments to the creditors of a bankrupt corporation of which the taxpayer was secretary. The payments were made for the purpose of strengthening his individual standing and credit, and reestablishing business relations with the corporation's former customers. The court held that such expenditures were not deductible for the reason that they did not constitute ordinary and necessary expenses of operating a business. The decision was based upon facts which, we think, are clearly distinguishable from the present proceeding.

On the issue submitted, respondent's action is reversed.

*Judgment will be entered under Rule 50.*