JOHN W. CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63638. Filed September 30, 1958.

*R. Monroe Schwartz, Esq.*, for the petitioner.
*Jack D. Yarbrough, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in the amount of $573.66 in petitioner's income tax for the taxable year 1954.

Petitioner concedes the correctness of respondent's determination in relation to the issue involving exclusion from income for dividends received.

The computation of the amount of petitioner's medical expense deduction will be determined under Rule 50.

The substantial questions presented are whether petitioner is entitled to deduct, as ordinary and necessary business expenses, the amount of $1,250 paid as attorneys' fees and $1,500 paid for release of alleged civil liability where the attorneys' fees were paid by petitioner for defense against criminal charges of assault (which were dismissed) and for advice of counsel and settlement of claim of civil liability based upon the same charges, the payment for release of claimed civil liability having arisen out of the same circumstances. Fundamentally related to the issue is the question of whether or not said charges arose out of and proximately resulted from the legitimate business activities of petitioner.

### FINDINGS OF FACT.

Some of the facts are stipulated, and are incorporated herein by reference.

The petitioner filed his income tax return for the calendar year 1954 with the district director of internal revenue for the district of Georgia.

During 1954, petitioner was married and had three children. Petitioner's educational background consisted of high school, business college, and in 1953 the completion of law school.

During the period August 1942 to October 1945, petitioner served in the United States military service and received an honorable discharge.

On September 5, 1953, the petitioner entered into a contract with Periodical Publishers' Service Bureau, Inc. This agreement remained in effect throughout the year 1954. Petitioner's duties covered a territory which included the State of Georgia and most of Florida. As branch manager, petitioner's duties included the hiring of solicitors for magazine subscriptions and of office personnel, the soliciting of magazine subscriptions, and the collecting of money due on the subscriptions.

Petitioner paid all salaries of sales and office employees at a rate determined between petitioner and the respective employee without any control by his home office.

Petitioner's contract entitled him to receive 14 per cent of the gross amount of all new or renewal magazine subscriptions produced each month, plus 25 per cent of the gross amount of all collections made each month in his district.

If an applicant for an outside solicitor's job was a married female, petitioner's policy was always to interview the applicant's husband, have him understand the conditions under which the wife would be working, and get his approval before employing the applicant. Either petitioner or someone else on his staff interviewed every husband of every married female applicant.

During the month of September 1954, the petitioner interviewed in his office the female applicant for a job who was called as a witness herein by respondent. The aforesaid applicant came to petitioner's office of her own volition at the suggestion of one of petitioner's salesmen. Petitioner advised said applicant that he could only hire her for outside sales help as a solicitor. He also informed her that prior to the acceptance of her application for employment it would be necessary to interview her husband for the purpose of securing the latter's approval. Said applicant, by telephone, arranged a date and time for petitioner to interview her husband and herself at their home since it would have been impractical for her husband, because of his working hours, to come to petitioner's office to be interviewed.

On September 15, 1954, at approximately 8 a. m., the petitioner went to the home of said applicant and was admitted by her. The visit was pursuant to the arrangement made by telephone. Petitioner was thereupon told by said applicant that her husband was not there. Petitioner left a few minutes thereafter, without agreeing to employ said applicant. Petitioner did not assault the said applicant. He did not see applicant again that day.

Sometime later during the same day, said applicant swore out a warrant against petitioner charging him with assault with intent to rape. The warrant was served on petitioner at his office.

Later that afternoon, petitioner was served by a county deputy sheriff with another warrant containing the same charge.

Specifically, Warrant No. 29504 was dated September 15, 1954, and was issued by the Civil Court of Fulton County on the complaint of said applicant in the name of "State vs. John Clark, Periodical Publishers' Bureau, Inc., Healey Bldg." The offense charged in said warrant was assault with intent to rape and the date of the alleged offense was stated to be September 15, 1954. After this warrant was served on him, the petitioner retained the services of two attorneys, William Boyd and Newell Edenfield of Atlanta, Georgia, to represent him.

On September 24, 1954, a commitment hearing was held on Warrant No. 29504 in the Civil Court of Fulton County, and at the conclusion of the hearing the court entered the following order on Warrant No. 29504:

It appearing to the Court after hearing evidence of prosecutrix that the offense committed is Assault and Battery instead of Assault with Intent to Rape. The Prosecutrix is hereby allowed to withdraw this warrant upon payment of costs. This Sept. 24, 1954.

Quincy Arnold
*Judge, C. C. F. C.*

The docket records of the Civil Court of Fulton County reflect that the case involved in Warrant No. 29504 was dismissed on October 4, 1954, upon the request of prosecutrix, by C. Eugene Gilbert, her attorney, with the following additional notations:

I approve the dismissal, reason (see order in warrant) at request of Prosecutrix. This October 4, 1954.

Quincy Arnold
*Chief Judge, Civil Court of Fulton County*

Dismissed on approval by the Court Sept. 24th. This October 4, 1954.

Quincy Arnold
*Judge, Civil Court of Fulton County*

After hearing evidence, the defendant is discharged. This October 4, 1954.

The petitioner was represented at the commitment hearing of September 24, 1954, by his attorneys, Boyd and Edenfield.

No further action or suit was ever brought by said applicant against petitioner and she did not attempt to charge petitioner with assault and battery.

Petitioner paid his attorneys $1,250 for their professional services. He also turned over to them $1,500 which they paid over on his behalf to said applicant and her husband in consideration for a release to petitioner of any claim of civil liability which might arise under the circumstances above referred to. Petitioner had been informed by his attorneys that said applicant anticipated bringing a civil action against him for assault. The payment of $1,500 was made by petitioner on the advice of his counsel to settle out of court.

OPINION.

After careful observation of the witnesses at the trial, and upon consideration and detailed analysis of the record, we have accepted petitioner's testimony as substantially correct. It is to be noted that the criminal charges against petitioner were dismissed at the request of the prosecutrix, and the charges against petitioner have not been established in any court proceeding. See our comment in *Morgan S. Kaufman*, 12 T. C. 1114, 1117 (1949), from which we quote *infra*. We add that we do not think the charges are established by the record before us.

As a basis for consideration of the legal issues presented, we may summarize the significant facts to the following effect. Petitioner was the branch manager of a company engaged in the business of soliciting magazine subscriptions. Petitioner personally hired employees, including outside, door-to-door solicitors. If the prospective employee was a married woman and the intended job was that of an outside solicitor, petitioner made it a practice to hire such a solicitor only after interviewing her husband, and with the husband's consent. Petitioner visited the home of the prospective employee who testified in the instant case, who was a married woman, at a time when he believed her husband would be at home, the objective being to interview the husband and find out whether the latter would consent to the wife's employment as an outside solicitor of magazine subscriptions. The husband was not in fact at home at the time. Petitioner was admitted to the house by the wife and, upon being told that the husband was not at home, remained only a few minutes, leaving without agreeing to employ the wife. Shortly thereafter, petitioner was arrested on a charge of assault with intent to rape. The charge related to the occasion of his said visit to the home of the prospective employee. Petitioner employed counsel to defend him. It also developed that the prospective employee and her husband intended to sue petitioner and his company for damages arising out of the same alleged facts as those upon which the criminal charge was based. Later, on the advice of counsel (but denying the charges, both civil and criminal), petitioner, through his attorney, paid $1,500 to the prospective employee and her husband in consideration of a release of civil liability. The criminal charges were dismissed at the request of the prospective employee. Petitioner also paid $1,250 to his attorneys as counsel fees for representing him in the matters above referred to.

Petitioner deducted the total of $2,750 on his 1954 income tax return, which he claims to be deductible as ordinary and necessary trade or business expenses within the meaning of section 162 of the Code of 1954. Respondent, in his statutory notice, disallowed the deduction in toto.

We first consider whether the amount of $1,250 paid by petitioner as counsel fees in the matters above discussed was an ordinary and necessary trade or business expense.

The fees were paid for defending petitioner against the criminal charges (which were dismissed) and for advising him in relation to and procuring a settlement of the civil claim. We think it clear that both matters proximately resulted from petitioner's business as a branch manager, whose duties included interviewing prospective outside subscription solicitors, and, if such prospects were married women, to interview their husbands with the purpose of finding out whether the husbands approved such employment for their wives. Petitioner placed himself in jeopardy by pursuing a proper business objective, i. e., visiting the home of the prospective employee and her husband in order to interview the husband with the objective already described. We accept petitioner's testimony as to what occurred on the occasion of such visit.

In the light of the foregoing, we think an extended discussion of the numerous authorities revolving around somewhat similar problems would serve no useful purpose. We think the controlling principles are clearly set forth in *Morgan S. Kaufman, supra,* in which we said (p. 1117):

The petitioner claims the deductions under section 23 (a) (1) of the Internal Revenue Code. The respondent does not rely upon the disbarment, but argues that it would be neither ordinary nor necessary for a lawyer in the course of his practice to have to defend himself against a criminal charge of conspiracy to obstruct justice and to defraud the United States. However, it is sufficient if the basis of the indictment was connected with and grew out of the legitimate business transactions of the petitioner. *Kornhauser* v. *United States,* 276 U. S. 145; *Commissioner* v. *Heininger,* 320 U. S. 467; *Citron-Byer Co.,* 21 B. T. A. 308. The indictment was directly connected with and proximately resulted from the petitioner's practice of law. It must be assumed that the petitioner's transactions out of which the charge grew were legitimate, since a defendant is presumed innocent until proven guilty, and the petitioner was never proven guilty. *Hal Price Headley,* 37 B. T. A. 738. Cf. *Commissioner* v. *Heininger, supra; Greene Motor Co.,* 5 T. C. 314. Thus, to allow the deduction would not violate public policy. The charge was more than a threat to the petitioner's law practice.

Respondent relies heavily upon *Pantages Theatre Co.* v. *Welch,* 71 F. 2d 68 (C. A. 9, 1934). In that case, however, the corporate employer sought to deduct amounts expended by it in defense of Pantages, its president. Pantages, not the corporation, was charged. The opinion of the Court of Appeals clearly did not hold that Pantages would not have been entitled to the deduction if he, himself, had paid the expenses, and, in distinguishing *Citron-Byer Co.,* 21 B. T. A. 308 (1930), in effect, demonstrates that the instant case is distinguishable because here the expenses were paid by the individual charged. The court said (p. 70):

Appellant strongly relies upon Citron-Byer Co. v. Com'r, 21 B. T. A. 308, as supporting its contentions; but there the taxpayer was itself the defendant in the criminal action and the attorneys' fees were expended in its own behalf. For the same reason the case of Comm'r v. Continental Screen Co. (C. C. A.) 58 F. (2d) 625, is not in point.

Respondent also relies upon *Lewis* v. *Commissioner*, 253 F. 2d 821 (C. A. 2, 1958). Here, also, the facts differ materially from those in the instant case. In *Lewis, supra,* the expenses involved were incurred by petitioner to defend himself against his wife's suit to have him declared incompetent. Petitioner, an author, contended that publicity incident to the suit would adversely affect the sale of his books. It is clear, however, that the circumstances did *not* arise out of, and were *not* proximately related, as such, to his business as an author. The cases relied upon by the Court of Appeals in *Lewis, supra,* relate to expenses incurred in an attempt to prevent defamatory statements, which might adversely affect business, but likewise did not arise out of, and were not proximately related to, such business.

There is no occasion for us to review other cases cited, which likewise are distinguishable on their facts.

We hold, on the basis of the foregoing discussion, that the attorneys' fees are deductible by petitioner as ordinary and necessary business expenses.

We turn next to the payment of $1,500 in settlement of the claim for civil liability arising out of the same circumstances. We need not review the facts again. The settlement was neither an admission of guilt nor of liability. It was made on the advice of counsel. The settlement of threatened litigation arising from circumstances growing out of petitioner's business or employment status was clearly, we think, a proper exercise of business judgment.

Again, an extended discussion of the authorities is not required. The applicable principles are fully expressed in *Lawrence M. Marks*, 27 T. C. 464 (1956). We said (p. 467):

An analysis of the entire record convinces us that the payment in question was an ordinary and necessary expense of petitioner's trade or business as an investment banker and director, within the intendment of section 23 (a) of the Internal Revenue Code of 1939. Although the stipulation characterizes the payment as having been made "voluntarily," it can neither be properly characterized as gratuitous, nor as personal to petitioner in the nature of an expense to protect his personal reputation. There was a serious question as to whether he was in fact liable under section 16 (b) of the Securities Exchange Act of 1934. At the time the payment was made it was by no means clear that Shamrock could not have recovered the amount paid had it attempted to litigate the matter. The payment was in satisfaction of a bona fide possible cause of action, arising out of petitioner's trade or business, and was by no means "voluntary" in the sense of being gratuitous or without a valuable consideration.

Expenditures incurred by a taxpayer to protect his business reputation or avoid unfavorable business or commercial publicity have been regarded as

deductible. *Helvering* v. *Community Bond & Mortgage Corporation*, 74 F. 2d 727 (C. A. 2); *Paul Draper*, 26 T. C. 201; *William L. Butler*, 17 T. C. 675; *International Shoe Co.*, 38 B. T. A. 81.

We hold, therefore, that the $1,500 payment in settlement of the claim of civil liability is also deductible as an ordinary and necessary business expense.

Petitioner concedes that respondent's position is correct in regard to petitioner's claim of an exclusion from income for dividends received.

The issue raised in the pleadings relating to disallowance of medical expenses merely requires a recomputation under Rule 50 in the light of our opinion on the basic issues presented. It also appears that petitioner made a mathematical mistake on his return in computing the net amount of allowable medical expenses for which we assume that appropriate adjustment will likewise be made in the Rule 50 computation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TIETJENS, *J.*, dissenting: I dissent because I think the sums claimed are nondeductible personal expenses.

---

ATKINS, *J.*, dissenting: I respectfully dissent from the view of the majority in the instant case. It seems to me that, wholly aside from whether the petitioner was guilty of the alleged offense, we are concerned with the nature of the act or crime alleged. Here the alleged act giving rise to the charge bears no relation whatever to the business of the petitioner. It is entirely personal. It is not determinative that but for the business call which the petitioner made upon the prosecutrix the charge would not have been made. Accordingly, neither the attorneys' fees nor the amount paid in settlement of a possible civil claim is deductible as an ordinary and necessary business expense. See *Sarah Backer*, 1 B. T. A. 214; *George L. Rickard*, 12 B. T. A. 836; and *Pantages Theatre Co.* v. *Welch*, (C. A. 9) 71 F. 2d 68.

HARRON and TRAIN, *JJ.*, agree with this dissent.