236 F.Supp. 972 (1964)
Ted H. BANISTER and Marion C. Banister, Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 62 C 351(1).
United States District Court E. D. Missouri, E. D.
December 8, 1964.
Ernest D. Grinnell, Jr., George E. Bailey and Paul R. Moody, St. Louis, Mo., for plaintiffs.
Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.
HARPER, Chief Judge.
Plaintiffs brought this suit to recover an alleged overpayment of Federal income taxes in the amount of $110.42 paid by the plaintiffs on distributions made to them by the St. Louis-San Francisco Railway Company (hereinafter referred to as Frisco) in the years 1956 and 1959. Plaintiffs contend that the distribution in question was a return of capital rather than income, and hence the tax assessed on such amounts was improper. All of the facts have been stipulated by the parties, leaving the issues clearly defined. The Stipulation of Facts is summarized as follows (the numbers refer to the numbered paragraphs of the Stipulation of Facts):
The plaintiffs are husband and wife, filing joint income tax returns, and plaintiff, Ted Banister, was an employee of Frisco at all times here in question (1 and 2). Plaintiffs purchased 100 shares of Frisco common stock in May, 1955, and received a bonus from the employer *973 Frisco of 50 shares in July, 1955 (3). From 1956 to 1959, plaintiffs received distributions from Frisco on their stock as follows: 1956, $300.00; 1957, $225.00; 1958, $12.50; 1959, $50.00. The years in dispute here are 1956 and 1959 and the distributions for those years were reported as dividend income and Federal income tax was paid thereon (4).
Frisco is a Missouri corporation, organized and commencing business in 1916 as a common carrier with its principal office in St. Louis, Missouri (5). On November 1, 1932, a receiver was appointed and the company was operated by receivers until October 1, 1933, when the properties of the company were transferred to trustees under Section 77 of the Bankruptcy Act. The company was reorganized, effective January 1, 1947, and the properties were transferred by the trustee back to the Frisco, which since that time has continuously owned and operated them (7).
On December 31, 1932, Frisco had outstanding debt securities of approximately $303,000,000.00, and with only minor reductions, these securities were outstanding throughout the periods of receivership and reorganization proceedings. Interest matured and was accrued on these securities to approximately $180,900,000.00, and such interest was deducted in computing net income for Federal income tax purposes. Approximately $3,000,000.00 of this amount was cancelled in 1943 and approximately $76,500,000.00 was paid to security holders pursuant to the reorganization (8). Under the reorganization plan, the outstanding common and preferred stock was cancelled as worthless and those holding the several classes of indebtedness received new bonds, preferred stock, common stock and cash and had their previously outstanding indebtedness cancelled. These new stocks and securities issued to the old creditors was in full and complete satisfaction of their claims against the debtor (9). The reorganized company opened a new set of books as of January 1, 1947, with an entry to reflect the obligations and securities it assumed, but no entries were made on either the old or new books with respect to the prior obligations, defaulted interest accruals, and stock, they being merely left outstanding on the old books (11).
In filing its Federal income tax returns from 1933 to 1941, Frisco reported net losses after accruing interest on its long term debt. It reported net income for 1942 through 1946, but reported aggregate losses during the entire period of the reorganization due to the losses during 1933 to 1941 of $50,958,028.90 (12). In both 1956 and 1959, distributions made to stockholders of Frisco exceeded Frisco's current earnings and profits for those years (16). In this proceeding it has been further stipulated that the only concern now is as to plaintiffs' right to recover, with the amount of recovery, if any, being reserved for later decision, if necessary (25).
The outcome of this suit for refund turns less on tax law than on bankruptcy law, for the parties to the litigation have further stipulated the issue involved as turning upon the effect of the Frisco 1947 reorganization. If Frisco had zero earnings and profits on December 31, 1946, due to its reorganization effective January 1, 1947, then on December 31, 1955, Frisco had accumulated and current earnings and profits sufficient to cover the distributions during 1956 and 1959, and plaintiffs have no right to recover under this issue. The alternative result is that if Frisco's earnings and profits are deemed to be zero at the beginning of the 1932 receivership or reorganization proceedings from 1932 through 1946, and the aggregate deficit from 1932 survived the completion of the reorganization but is not to be reduced by the disposition of the accrued and unpaid interest as of January 1, 1947, then Frisco had a deficit in accumulated earnings and profits at the beginning of both 1956 and 1959 (17). If the deficits in earnings and profits should be considered in determining the accumulated earnings and profits at the beginning of 1956 and 1959 and if the interest accrued on the obligations of *974 Frisco which were discharged in the 1947 reorganization should be included in computing such deficits, then it is further stipulated that portions of the 1956 and 1959 distributions are not taxable as dividend income to the plaintiffs. However, if the deficit in earnings and profits arising during the reorganization period should be reduced as of January 1, 1947, by the amount of the accrued interest on the obligations of Frisco and of which it was discharged, then all distributions received by plaintiffs were fully taxable as dividend income and plaintiffs cannot recover.
The situation is thus left to be the position today of the deficit which Frisco had incurred prior to the 1947 reorganization. Did the reorganization under Section 77B of the Bankruptcy Act discharge the deficit or did it survive that action? Based on United States v. Kavanagh, 8 Cir., 308 F.2d 824, the interest and other deficits did not survive, but rather, were discharged along with all of the liabilities of the Frisco.
In Kavanagh, supra, three predecessor corporations were reorganized under Section 77B into one corporation, the final decree being entered in 1940. The general creditors of the three corporations received 33 1/3 % of the face amount of their claims and "upon payment thereof the three `debtor' corporations were `forever released' from the claims of such creditors, as was `the reorganized corporation, and all its assets from any and all further claims from said parties.'" (l. c. 829.) In 1952 and 1953, Kavanagh received distributions from the reorganized corporation Bell-Sorensen and in his suit sought a partial refund of taxes paid on the entire distribution. The theory of his case was of "deficit-carryover" from the predecessor corporations and a judgment for the taxpayer was obtained in the District Court. The Court of Appeals reversed, finding no "deficit-carryover" existing which Bell-Sorensen had assumed in reorganization that could be subsequently used to offset against earnings. The Court of Appeals considered Helvering v. Cement Investors, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649 (1942), to be controlling and demonstrating that there could be no "deficit-carryover" as a result of such a reorganization.
Here, as in Kavanagh, there is no deficit carryover provisions in the reorganization plan of Frisco which can be asserted by plaintiffs. When plaintiff, Ted Banister, obtained his shares of Frisco stock, he acquired a proportionate interest in the corporation as it existed at that time. When Frisco was reorganized in 1947, it was discharged of its liabilities (9), and there is nothing to show any of those specific liabilities still existing to create the deficit which they rely on. As was further stipulated, new stocks and securities were issued to Frisco's creditors in full payment of their claims against the company. With their claims satisfied, to whom could Frisco be indebted that would leave a deficit existing to be assumed by the reorganized Frisco?
By stipulation of the parties and as the obvious result of the reorganization, the Frisco emerged freed of its old debts, leaving none outstanding to cause a deficit such as is now claimed by the plaintiffs. To allow plaintiffs' contentions to prevail in this case would be to give Frisco a position of "having its cake and eating it too." It would be allowing Frisco to proceed through bankruptcy and reorganization and thereby obtain a complete discharge of its liabilities but yet being able to continue its operations. Then, despite the discharge of the old debts in the reorganization, plaintiffs would have Frisco now use the pre-reorganization deficit created by those liabilities to offset its earnings and profits of subsequent business years. It is a double benefit that is sought: Escape of liability for its debts, but also escape from taxation of its shareholders by taking advantage of its former operating deficit. It was not the purpose of either the bankruptcy or the tax laws to permit such a doubled advantage. As of the 1947 reorganization of Frisco it received a clean slate; it was able to continue operations as a going *975 concern, free of its former economic burdens. But, along with this fresh start went the duties and burdens shared by all businesses, one of these being taxation of its own income and the dividend income of its shareholders, and the distribution of dividends by a corporation to its shareholders does not lose its true nature by the distributing corporation merely calling it one out of capital. There was no existing deficit which Frisco could take advantage of and thereby make its distribution one out of capital. Therefore, the only result is that it was a dividend paid out of earnings and profits to shareholders and fully taxable to them as dividend income.
The most recent case holding against the plaintiffs' position here is Dunning v. United States, D.C., 232 F.Supp. 915, which dealt with a similar tax problem in a reorganization plan calling for incorporation of a new company. Plaintiffs were shareholders of the new corporation and paid income tax on distributions received in 1958, 1959 and 1960 as taxable dividends. Plaintiffs asserted their claim for a refund because parts of the distributions were from sources other than earnings and profits. The old company clearly had a deficit in 1936 at the time of reorganization and the issue remained to be whether any of the deficit should be carried over to the new corporation and then used to compute subsequent accumulated earnings and profits in the subsequent years. The District Court held that the deficit did not carry over to the new corporation and disallowed the claim for a refund. The District Court considered Kavanagh, supra, to be the controlling case, refusing to extend the early case of Commissioner v. Sansome, 2 Cir., 60 F.2d 931, so as to permit such a carryover. The court made a thorough review of the cases in this area, including those relied on by plaintiffs here, criticising and distinguishing them. The "factual realities" pointed out in both Dunning and Kavanagh are that the entire § 77B proceeding was designed to permit companies to start anew with a new financial sheet. No deficit carryover was intended to follow either in accounting procedure or as a legal consequence of the reorganization. This same intention was clearly meant to prevail in the case at bar, thus leaving no deficit to be taken advantage of by either Frisco or the shareholding plaintiffs and thereby removing the basis for this suit for refund.
This memorandum opinion and the stipulation of facts are adopted by the court as the findings of fact, this opinion is adopted as the conclusions of law, and the clerk is directed to enter judgment for the defendant.