PAUL CASPERS AND ELLA ANDRE CASPERS, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 82431. Filed June 23, 1965.

*John M. Kiely*, for the petitioners.
*Jay B. Kelly*, for the respondent.

#### OPINION

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $4,993.07.

The only error originally assigned was that the respondent erred in determining "that the deduction of $9,000.00 for legal expense claimed in your Federal income tax return for the taxable year ended December 31, 1956 is not allowable under Section 212, Section 162, or any other section of the Internal Revenue Code of 1954 for the reason that the expenditure was not an ordinary or necessary expense incurred in connection with the determination of any tax liability nor in the conduct of a trade or business."

In a stipulation of facts "ordered and received and made a part of the record in this case," the parties have agreed "that of the total amount of $9,000 disallowed $4,000 thereof is allowable as a deduction for legal fees paid in said taxable year. The balance of $5,000 of the amount claimed as a deduction for legal expenses for the taxable year 1956 is still in dispute."

By an amendment to petition duly filed, petitioners alleged "that in their return for 1956 they showed as income and paid the tax thereon the sum of $11,500.00 received by them as dividends on common stock of the St. Louis-San Francisco Railway Co. That 76% of said sum, or $8,740.00, was nontaxable by reason of the fact that said sums represented distributions from other than earnings and profits of the said Railroad." By reason of this amendment, petitioners prayed that this Court determine there is no deficiency due and that petitioners are entitled to a refund.

Respondent, by an amendment to his answer, asserted a claim for an increased deficiency in the amount of $4,154.25, based on gain realized by the petitioners on the exchange of certain securities in the taxable year 1956. In the above-mentioned stipulation of facts, the "Petitioners concede the correctness of the adjustment upon which the increase in the statutory deficiency previously determined is based." Thus, there remains for our decision two issues, namely, (1) the legal fee issue, and (2) the $11,500 dividend issue.

All of the facts were stipulated. The stipulation is incorporated herein by reference and summarized below under the respective issues.

Petitioners are husband and wife and reside in Chicago, Ill. They filed a joint Federal income tax return for the taxable year 1956 with the district director of internal revenue at Chicago.

### The Legal Fee Issue

Petitioner Paul Caspers, hereinafter referred to as petitioner, has been engaged in the real estate business for more than 40 years and has held various offices with the Chicago Real Estate Board. He was so engaged during the years 1953, 1954, and the taxable year 1956. For the years 1953, 1954, and 1956, the income of the petitioner consisted of salary, appraisal fees, dividends, and rental income from properties owned by the petitioner and his wife.

During 1955 an internal revenue agent examined petitioner's books and records for 1953 and 1954 to determine if petitioner's business income had been properly reported. The agent proposed to make nine specific adjustments to petitioners' income for those years as follows:

1. Adjustment of the sales tax deduction.
2. Disallowance of the real estate tax deduction and capitalization thereof.
3. Disallowance of deduction for repairs and capitalization thereof.
4. Disallowance of deduction for attorney's fees and capitalization thereof.
5. Disallowance of deduction for revenue stamps and title search and capitalization thereof.
6. Adjustment of capital gains.
7. Adjustment of travel expense.
8. Adjustment of entertainment expense.
9. Increase of depreciation expense.

In January 1956 petitioner was indicted and charged with a violation of section 201, title 18, of the United States Code. The indictment is as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 56 CR630 |
| vs. | Vio.: Section 201, Title 18, |
| PAUL CASPERS | United States Code. |

The JANUARY 1956 Grand Jury charges:

That on or about October 17, 1955, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division,

PAUL CASPERS,

defendant herein, unlawfully, willfully and knowingly did give a sum of money, to wit, $400.00, to a certain Arthur W. Hill, who was then and there an officer and employee of the United States, to wit, an Internal Revenue Agent, as the defendant then and there well knew, with intent to influence the said Arthur W. Hill's decision and action on the question and matter of the audit made by the said Arthur W. Hill of the personal income tax returns of the defendant for the years 1953 and 1954, which said question and matter was then pending before the said Arthur W. Hill in his official capacity as an Internal Revenue Agent in the Internal Revenue Service of the Treasury Department; in violation of Section 201, Title 18, United States Code.

A TRUE BILL:

*FOREMAN.*

*UNITED STATES ATTORNEY.*

Petitioner was tried on the above indictment before a jury. At the conclusion of the trial, the jury failed to agree and was discharged. The cause was continued to be set for a new trial. Before a date was set, however, the court, on motion of the Government by the U.S. attorney, "ORDERED that the Indictment herein be and the same is hereby dismissed."

During the taxable year 1956 petitioner paid his attorney the amount of $5,000 for legal services rendered by him in the trial of the criminal case.

On their joint return for 1956 petitioners claimed among their itemized deductions on page 2 of their return a deduction for "Legal and Professional fees $9,650.00." The respondent disallowed $9,000 of the amount claimed and in a statement attached to the deficiency notice explained the disallowance thus:

(e) It is determined that the deduction of $9,000.00 for legal expense claimed in your Federal income tax return for the taxable year ended December 31, 1956 is not allowable under Section 212, Section 162, or any other section of the Internal Revenue Code of 1954 for the reason that the expenditure was not an ordinary or necessary expense incurred in connection with the determination of any tax liability nor in the conduct of a trade or business.

The last paragraph of the stipulation of facts is as follows:

32. The legal expenses claimed as a deduction by the petitioner for the taxable year 1956 in the amount of $9,000, which amount respondent disallowed as a deduction, was not paid or incurred in connection with the determination of deficiencies in income taxes paid by the petitioner for the taxable years 1953 and 1954.

From the facts stipulated we find as an ultimate fact that the indictment against petitioner arose out of and was proximately connected with petitioner's real estate business.

The sections of the Internal Revenue Code of 1954 that are here involved are in the margin.[1]

We think the $5,000 petitioner paid to his attorney is deductible under section 162(a). The causal connection between his business and the payment of the fee was never broken. The real estate business conducted by petitioner was extensive. He had many items of income and many items of deductions. He, of course, was required to file income tax returns for 1953 and 1954. In due time such returns were examined by a revenue agent who proposed to make several changes in the items reported. A reading of the indictment clearly shows that it grew out of this examination. Petitioner was tried under the indictment but was not convicted. Later, the indictment was dismissed. The $5,000 fee here in question would not have been paid but for petitioner's income and deductions pertaining to his real estate business.

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *
SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
    *       *       *       *       *       *       *
(3) in connection with the determination, collection, or refund of any tax.
SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

In *Kornhauser* v. *United States*, 276 U.S. 145, the Supreme Court held "that where a suit or action against a taxpayer is directly connected with, or, as otherwise stated * * * proximately resulted from, his business, the expense incurred is a business expense within the meaning of section 214(a), subd. 1, of the act."[2] See also *Commissioner* v. *Heininger*, 320 U.S. 467; and *Lilly* v. *Commissioner*, 343 U.S. 90.

We have held in several cases that where a taxpayer is charged with a criminal offense which grew out of the legitimate business transactions of the taxpayer and the taxpayer is tried but not convicted, the cost of such trial, including attorney fees, is deductible as ordinary and necessary business expenses. *Morgan S. Kaufman*, 12 T.C. 1114; *John W. Clark*, 30 T.C. 1330; and *Commissioner* v. *Shapiro*, 278 F. 2d 556 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court.

In *Morgan S. Kaufman*, *supra*, the taxpayer was a lawyer. He was indicted for conspiracy to obstruct justice. He paid attorneys' fees and other expenses in connection with two trials. In each case the jury disagreed and finally a nol-pros was entered. In holding that the expenses were deductible as ordinary and necessary expenses under section 23(a)(1) of the 1939 Code, which is substantially the same as section 162(a) of the 1954 Code, we said in part:

The petitioner claims the deductions under section 23(a)(1) of the Internal Revenue Code. The respondent does not rely upon the disbarment, but argues that it would be neither ordinary nor necessary for a lawyer in the course of his practice to have to defend himself against a criminal charge of conspiracy to obstruct justice and to defraud the United States. However, it is sufficient if the basis of the indictment was connected with and grew out of the legitimate business transactions of the petitioner. *Kornhauser* v. *United States*, 276 U.S. 145; *Commissioner* v. *Heininger*, 320 U.S. 467; *Citron-Byer Co.*, 21 B.T.A. 308. The indictment was directly connected with and proximately resulted from the petitioner's practice of law. It must be assumed that the petitioner's transactions out of which the charge grew were legitimate, since a defendant is presumed innocent until proven guilty, and the petitioner was never proven guilty. *Hal Price Headley*, 37 B.T.A. 738. Cf. *Commissioner* v. *Heininger*, *supra*; *Greene Motor Co.*, 5 T.C. 314. * * *

In *Commissioner* v. *Shapiro*, *supra*, Rae Shapiro, who was the wife of Michael Shapiro, filed returns for the years 1941 through 1944, including therein the income of a business she conducted under the name of "Shapiro's." The returns were investigated and in 1946 the respondent determined deficiencies in tax and additions to tax for fraud. In July 1950 both Michael and Rae were indicted for attempting to defeat and evade tax due and owing by Rae by filing false and fraudulent tax returns. Later, the indictment was dis-

---

[2] Sec. 214(a)(1), Revenue Act of 1918, which is substantially the same as sec. 162 (a), I.R.C. 1954.

missed *as to Rae*. The Seventh Circuit affirmed our holding *as to Rae* that the attorneys' fees paid for services in the defense of Rae which resulted in the dismissal of the indictment against her were deductible as ordinary and necessary expenses of her business. In the course of our opinion, we had said:

> The respondent also contends that the litigation arose over the filing of personal income tax returns and hence the fees could not be regarded as business expenses. But the evidence shows that the income reported on the returns or involved in the dispute came from a business operated as a sole proprietorship. Necessarily the profits of such a business had to be reported on individual returns or joint returns of husband and wife. The litigation concerned business income and the costs of such litigation are business expenses and are deductible except where a conviction results and public policy denies the deduction. * * * Where there is an indictment, but the prosecution is ended without a conviction the presumption must prevail that the defendant is not guilty and the costs of the defense are deductible. *Morgan S. Kaufman*, 12 T.C. 1114 * * *

In the instant case there was no conviction and no question of public policy is involved. Suffice it to say, we can see no distinction between *Shapiro* where Rae was indicted for allegedly filing false and fraudulent returns and the instant case where petitioner was indicted for allegedly attempting to bribe a revenue agent. In both cases the prosecution ended without a conviction and the presumption must prevail that the defendant was not guilty and that the costs of defense are deductible as a business expense. *Morgan S. Kaufman, supra.*

It is not too clear what the parties meant by paragraph 32 of the stipulation which we have previously set out in full herein. In the first place, the parties had previously stipulated that only $5,000 of the $9,000 was still in dispute. Petitioners have made no reference to paragraph 32 anywhere in their briefs. It seems to us that the stipulation comes close to stipulating a conclusion of law which, if it does, we would disregard. See *Ohio Clover Leaf Dairy Co.*, 8 B.T.A. 1249, rehearing denied 9 B.T.A. 433. However, since we hold that petitioner is entitled to deduct the $5,000 as a business expense under section 162(a) of the 1954 Code, we need not pursue the matter further.

We hold for petitioners on this issue.

### The $11,500 Dividend Issue

Petitioner purchased or received in exchange shares of stock in the St. Louis-San Francisco Railway Co. (hereinafter referred to as Frisco) on the dates and in the number of shares as follows:

#### Preferred stock

| Date: | Number of shares |
| --- | --- |
| July 1949 | 300 |
| Oct. 1, 1953 | 700 |

[These shares were exchanged on Sept. 21, 1956, for 5-percent income debentures in the face amount of $100,000, Series A, due Jan. 1, 2006, and 250 shares of common capital stock of the Frisco.]

*Common stock*

| Date | Number of shares |
|------|------------------|
| Apr. 22, 1947 | 2,000 |
| June 3, 1947 | 2,000 |
| Jan. 28, 1948 | 1,000 |
| May 25, 1949 | 500 |
| Mar. 23, 1956 | 250 |
| Sept. 21, 1956 | [1]250 |

[1] These shares were received in exchange for preferred stock and were issued ex dividend for the remainder of 1956.

On December 6, 1956, petitioner made a gift of 1,000 shares of common stock of Frisco. During the taxable year 1956 petitioner received distributions from Frisco on the shares of common stock so held in the amount of $11,500. These distributions of $11,500 were included as dividend income in petitioners' joint Federal income tax return for the taxable year 1956.

Frisco was incorporated under the laws of the State of Missouri on August 24, 1916, and succeeded as of November 1, 1916, to certain properties formerly of the St. Louis & San Francisco Railroad sold at foreclosure on July 19, 1916, in accordance with the terms of a plan of reorganization. The 1916 sale was confirmed by the Federal District Court at St. Louis on August 29, 1916. St. Louis & San Francisco Railroad Co. was itself a reorganization in 1896 of the St. Louis & San Francisco Railway Co. Frisco is engaged as a common carrier in the business of transporting persons and property by rail in Missouri and, directly and through subsidiaries, in eight other States. Its principal office is located at 906 Olive Street, St. Louis 1, Mo. At all times it has filed its Federal income tax returns on a calendar year basis utilizing the accrual method of accounting.

For the purposes of this proceeding only, Frisco had post-March 1, 1913, accumulated earnings and profits as of December 31, 1932.

On November 1, 1932, upon petition of a creditor, James M. Kurn was appointed receiver of the properties of Frisco by the U.S. District Court for the Eastern District of Missouri, Eastern Division (hereinafter referred to as the court). John G. Lonsdale was appointed coreceiver on November 5, 1932. The properties of Frisco were operated by the receivers until October 1, 1933, upon which date the properties were transferred to trustees appointed by the court in proceedings under section 77 of the Bankruptcy Act. Kurn and Lonsdale were named trustees. Subsequently these individuals died and Frank A. Thompson was appointed sole trustee. Pursuant to a plan of reorganization confirmed by the court on November 15, 1945, Frisco was reorganized effective January 1, 1947. On the effective date of the reorganization, the properties were transferred by the trustee to Frisco

pursuant to the plan of reorganization. Frisco has continuously owned and operated such properties since January 1, 1947.

At December 31, 1932, Frisco had outstanding approximately $303 million in debt securities. With minor reductions, these securities were outstanding during the entire period of the receivership and reorganization proceedings. Interest matured and was accrued on such outstanding securities during the period of the receivership and the reorganization proceedings in the aggregate amount of approximately $180,900,000 and such interest was deducted in the computation of net income subject to Federal income tax in the returns filed during the reorganization period in the names of the receivers, trustees, or trustee, followed by "St. Louis-San Francisco Railway Company, Debtor." Of this amount, approximately $3 million was canceled in 1943 and approximately $76,500,000 was paid to the security holders in cash prior to, or contemporaneously with, the effective date of the reorganization.

Under the terms of the reorganization plan as approved by the Interstate Commerce Commission and the courts, the previously outstanding common and preferred stocks were eliminated as worthless and the holders of the several classes of indebtedness received new bonds, preferred stock, common stock, and cash, and Frisco's previously outstanding indebtedness was canceled. Such new stocks and securities were received by the old creditors in full and complete satisfaction of their claims against the debtor.

Incident to the reorganization the Frisco charter was amended to cancel its original stock and to abolish the rights of the holders thereof.

The reorganized company opened a new set of books as of January 1, 1947, with an entry to reflect the obligations and securities it assumed. Frisco made no entries on either the old or new books with respect to any of its prior obligations, defaulted interest accruals, and stock; they were merely left outstanding on the old books.

In its Federal income tax return for each of the years 1933 through 1941, Frisco, which computed its income according to the accrual method of accounting, reported net losses after accruing interest on its long-term debt. It reported net income for each of the years 1942 through 1946. Nevertheless, due to the losses reported during the years 1933 through 1941, Frisco reported aggregate losses (as adjusted in some years by the internal revenue agent on audit) during the entire period of the reorganization of $50,958,028.90. The income tax returns of Frisco for the years 1931 through 1939 were accepted as filed by the respondent without any audit. The Federal income tax returns of Frisco for the years 1940 through 1946 were examined by the respondent and interest accrued on its debt obligations was allowed for each of such years.

In the year 1956 distributions made to stockholders as such exceed Frisco's current earnings and profits for the year 1956.

Paragraph 20 of the stipulation is, in part, as follows:

20. If it be determined that the Frisco, by reason of its reorganization effective as of January 1, 1947, had zero earnings and profits at December 31, 1946, then the Frisco, as of December 31, 1955, had accumulated in current earnings and profits sufficient to cover the distributions made in 1956, and, therefore, the petitioner's asserted claim of a refund for the taxable year 1956 is without merit. * * *

Other stockholders of Frisco have taken this same issue to the U.S. District Court, Eastern District of Missouri, Eastern Division, No. 62 C 351(1); and to the U.S. Court of Claims, No. 275-62. See *Banister* v. *United States*, 236 F. Supp. 972 (E.D. Mo.), and *McCullough* v. *United States*, 344 F. 2d 383 (Ct. Cl., Apr. 16, 1965). In both of these cases the issue was decided in favor of the Government and against the plaintiffs.

We quote with approval the court's opinion in *Banister* v. *United States, supra*, in which the court said:

By stipulation of the parties and as the obvious result of the reorganization, the Frisco emerged freed of its old debts, leaving none outstanding to cause a deficit such as is now claimed by the plaintiffs. To allow plaintiffs' contentions to prevail in this case would be to give Frisco a position of "having its cake and eating it too." It would be allowing Frisco to proceed through bankruptcy and reorganization and thereby obtain a complete discharge of its liabilities but yet being able to continue its operations. Then, despite the discharge of the old debts in the reorganization, plaintiffs would have Frisco now use the pre-reorganization deficit created by those liabilities to offset its earnings and profits of subsequent business years. It is a double benefit that is sought: Escape of liability for its debts, but also escape from taxation of its shareholders by taking advantage of its former operating deficit. It was not the purpose of either the bankruptcy or the tax laws to permit such a doubled advantage. As of the 1947 reorganization of Frisco it received a clean slate; it was able to continue operations as a going concern, free of its former economic burdens. But, along with this fresh start went the duties and burdens shared by all businesses, one of these being taxation of its own income and the dividend income of its shareholders, and the distribution of dividends by a corporation to its shareholders does not lose its true nature by the distributing corporation merely calling it one out of capital. There was no existing deficit which Frisco could take advantage of and thereby make its distribution one out of capital. Therefore, the only result is that it was a dividend paid out of earnings and profits to shareholders and fully taxable to them as dividend income.

Judge Collins, in his opinion in *McCullough* v. *United States, supra*, stated:

Thus, this court holds that, upon completion of the Frisco reorganization, the preexisting deficit was wiped out. * * *

Our decision that the deficit in earnings and profits did not survive the reorganization is fatal to plaintiffs' position regarding this issue. (See finding 17(i), *infra*.) * * *

\* \* \* \* \* \* \*

This court does not accept the contention of plaintiffs that November 1, 1932, the date upon which the Frisco receivership was commenced, was the decisive date with regard to the alteration of the earnings and profits account. There is, in our opinion, no warrant for extending the "full priority rule" to the lengths which plaintiffs request. The recapitalization became effective on January 1, 1947, and that date must be considered as the time when the Frisco's earnings and profits became zero (i.e., when the aggregate deficit of the years, 1933 through 1947, was eliminated).

\* \* \* \* \* \* \*

In conclusion, we hold that the distribution which plaintiffs received from the Frisco in 1957 and 1958 were fully taxable as ordinary income. \* \* \*

We are in entire agreement with the opinions in the two decisions just quoted from and, therefore, hold that the distribution of $11,500 received by petitioners during 1956 on the common stock of Frisco is fully taxable.

It may be noted in passing that the Court of Claims' finding of fact 17 (i)[3] is in all material respects the same as that part of paragraph 20 of the stipulation we have previously set out herein.

We hold for the respondent on this issue.

*Decision will be entered under Rule 50.*

---

[3] "17. The parties stipulated as follows with respect to the consequences flowing from various possible rulings herein by the Court:

"(i) If it be determined that the Frisco, by reason of its reorganization effective as of January 1, 1947, had zero earnings and profits at December 31, 1946, then the Frisco, as of December 31, 1955, had accumulated and current earnings and profits sufficient to cover all distributions during the years in suit subsequent to that date, and plaintiffs have no right to recover under this issue."